UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ELAYNE WHITEHEAD,

    Plaintiff,

v.                                                         Case No: 2:18-cv-470-FtM-99MRM

OCWEN LOAN SERVICING, LLC,

    Defendant.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendant's Motion to Dismiss (Doc. 13) filed on August 29, 2018. Plaintiff filed a Response in Opposition (Doc. 20) on September 26, 2018. For the reasons below, the Motion is denied.

## **BACKGROUND**

After falling behind on her home mortgage, Plaintiff Elayne Whitehead alleges that Ocwen Loan Servicing, LLC violated the Telephone Consumer Protection Act (TCPA) and the Florida Consumer Collection Practices Act (FCCPA) by placing numerous calls to her cellphone using an automatic telephone dialing system (ATDS) or prerecorded voice message without her consent in an attempt to collect the debt. The calls began in June 2014 and continued to the filing of the Complaint. (Doc. 1, ¶ 23). In January 2018,

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Plaintiff answered a call from Defendant, met with an extended pause, held the line, and was eventually connected to a live representative. (*Id.*, ¶ 24). Plaintiff then demanded that Defendant stop calling her. (*Id.*) During this call, "Plaintiff unequivocally revoked any express consent Defendant may have had for placement of telephone calls [*sic*] Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a prerecorded or artificial voice." (*Id.*, ¶ 25). Despite Plaintiff's revocation, Defendant continued to place automated calls to her. (*Id.*, ¶ 27).

Plaintiff states that "she knew it was an autodialer because of the vast number of calls she received and because she heard a pause when she answered her phone before a voice came on the line from Defendant." (Doc. 1, ¶ 20). This conduct, Plaintiff asserts, violates the TCPA's prohibition on placing non-emergency telephone calls using an ATDS or a prerecorded or artificial voice without having the express consent of the party called, and constitutes harassing behavior in violation of Section 559.72(7) of the FCCPA. (*Id.*, ¶¶ 49, 53.)

Pending before the Court is Defendant's Motion to Dismiss challenging whether Plaintiff has adequately alleged that Ocwen called her using an ATDS[2] as required by the TCPA based in large part on the D.C. Circuit's recent ruling in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), which invalidated portions of the FCC's 2015 definition of an ATDS.[3] In July 2015, the FCC issued a Declaratory Ruling and Order addressing "whether dialing equipment is an autodialer under the TCPA when it does not have the 'current capacity'

---

[2] The TCPA defines an ATDS as "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

[3] The TCPA vests the FCC with responsibility to promulgate regulations implementing the Act's requirements, has said about the issue. *See* 47 U.S.C. § 227(b)(2).

or 'present ability' to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (2015 FCC Order), 30 FCC Rcd. 7961, 7972. The 2015 FCC Order construed a device's "capacity" to encompass its "potential functionalities" with modifications such as software changes. *Id.* at 7974, ¶ 16 (holding that "the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities"). The 2015 FCC Order stated: "We affirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of 'autodialer') . . ., including when the caller is calling a set list of customers. We also reiterate that predictive dialers[4] . . . satisfy the TCPA's definition of 'autodialer' for the same reason." *Id.* at 7971-72. This Order followed a series of rulings, from 2003 to 2015, wherein the FCC had determined that predictive dialers and other new technologies qualified as an ATDS, even if they did not generally generate or store random or sequential numbers. The FCC's 2003 Order expanded its interpretation of an ATDS, subjecting debt collection calls to the TCPA's autodialer restrictions.

Following the 2015 FCC Order, Hobbs Act[5] petitions challenging the ruling under the Administrative Procedures Act were filed in the D.C. Circuit and Seventh Circuit, which

---

[4] The FCC characterized predictive dialers as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call." *In re Rules & Regs Implementing the TCPA*, 18 FCC Rcd. 14014 (2003).

[5] "The Hobbs Act provides the federal courts of appeals with 'exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of FCC orders." *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1306-07 (11th Cir. 2015) (quoting 28 U.S.C. § 2342(1)).

3

were consolidated and assigned to the D.C. Circuit Court of Appeals. On March 16, 2018, the DC. Circuit issued its decision, finding that the FCC's interpretation of "capacity" was impermissibly overbroad and expansive because under the FCC's ruling, all smartphones that have the capacity to gain ATDS functionality by downloading an app qualify as autodialers. *ACA Int'l v. FCC*, 885 F.3d 687, 701 (D.C. Cir. 2018). As an example of the FCC's lack of clarity, the D.C. Circuit noted that the 2015 FCC Order sometimes indicated "that a device must be able to generate and dial random or sequential numbers to meet TCPA's definition of an autodialer" while also stating that it can qualify even if it lacks that capacity. *Id.* at 702-03. The court recognized that "[i]t might be permissible for the Commission to adopt either interpretation. But the Commission cannot, consistent with reasoned decision making, espouse both competing interpretations in the same order." *Id.* at 703. The court found this distinction significant because, as described by petitions and amici, there are various types of calling equipment they wish to use to call set lists of numbers without any generation of random or sequential numbers; and at least some predictive dialers have no capacity to generate random or sequential numbers. *Id.* The D.C. Circuit did not definitely hold, however, what devices qualify as an ATDS.[6]

---

[6] In response to the *ACA Int'l* decision, the ACA joined numerous other organizations in filing a Petition for Declaratory Ruling with the FCC, requesting the agency:

1. Confirm that to be an ATDS, equipment must use a random or sequential number generator to store or produce numbers and dial those numbers without human intervention.

2. Find that only calls made using actual ATDS capabilities are subject to the TCPA's restrictions.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket 02-278. In response, the FCC issued a Public Notice on May 14, 2018, seeking comments on what constitutes an ATDS. It remains unknown what impact, if any, a ruling by the FCC on these issues could have on this case.

Ocwen argues that *ACA Int'l* not only vacated the 2015 FCC Order, but also the FCC's 2003 and 2008 Orders. In its opinion, the D.C. Circuit mentioned that the Petition properly challenged the FCC's 2015 Order as well as the FCC's related declaratory rulings in 2003 and 2008. *Id.* Thus, Defendant argues that it follows that the FCC's 1992 Order which found that the TCPA's restrictions did not apply to debt collection calls applies here and the TCPA count should be dismissed. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8773 (1992) (finding that the TCPA did not apply to debt collection calls "because such calls are not autodialer calls (*i.e.*, dialed using a random or sequential number generator)."

Defendant also argues that because the TCPA claim fails, the Court should decline to exercise supplemental jurisdiction over the FCCPA claim. Should the TCPA claim survive, Defendant argues that the FCCPA claim should be dismissed because Plaintiff fails to plead any facts to show that Ocwen's conduct was harassing and any conduct beyond two years is barred by the statute of limitations.

## STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The issue in resolving such a motion is not whether the non-movant will ultimately prevail, but whether the non-movant is entitled to offer evidence to support his claims. *See id.* at 678-79.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citations omitted). Although legal conclusions can provide the framework for a complaint, factual allegations must support all claims. *See id.* Based on these allegations, the court will determine whether the plaintiff's pleadings plausibly give rise to an entitlement to relief. *See id.* at 678-79. Legal conclusions couched as factual allegations are not sufficient, nor are unwarranted inferences, unreasonable conclusions, or arguments. *See Twombly*, 550 U.S. at 555.

Rule 8 of the Federal Rules of Civil Procedure provides parallel pleading requirements that also must be satisfied. Under this rule, "a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *See id.* at 678-79. Mere naked assertions are also inadequate. *See id.*

## DISCUSSION

### A. *ACA International's* Application to the Motion to Dismiss

Not surprisingly, since the D.C. Circuit's opinion in *ACA Int'l*, courts have reached differing conclusions as to the decision's impact on FCC Orders issued prior to 2015, and each of the parties have cited cases in support of their positions. *Compare* Doc. 13, pp. 8-9 (citing at least seven cases generally finding that *ACA Int'l* voided the FCC's interpretation of an ATDS originally adopted in the 2003 Order and reaffirmed in

6

subsequent orders) *with* Doc. 20, Exhibits A-N (citing at least thirteen cases generally finding that predictive dialers remain an ATDS pursuant to the FCC's 2003 and 2008 Orders). So far, the Eleventh Circuit has not weighed in on the application of *ACA Int'l*.

While it is easy to get caught up in the minutia, what Defendant asks the Court to do at the Motion to Dismiss stage - which tests the sufficiency of the pleadings - is to determine whether *ACA Int'l* vacated all of the FCC's interpretations with respect to what constitutes an ATDS after 1992 and that the 1992 Order governs. However, such a determination is not required at this stage because Plaintiff's allegations plausibly allege a violation of the TCPA based on its statutory definition, which was not challenged in *ACA Int'l*.

Since the statutory definition of an ATDS (as opposed to the FCC's interpretation of an ATDS) was not questioned in *ACA Int'l*, the FCC's guidance does not alter the statutory definition of an ATDS. Under the ATDS, telephone dialing equipment that "has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator" qualifies as an ATDS. For purposes of the Motion to Dismiss, the Court can determine whether Plaintiff has plausibly alleged Ocwen contacted them using telephone dialing equipment that falls within the TCPA's statutory definition of an ATDS by applying the statute and Eleventh Circuit precedent in this regard. So, the Court must address the instant Motion by turning to the statutory definition of an ATDS found in Section 227(a)(1), set forth below.

### B. Count I: Telephone Consumer Protection Act

The TCPA is a consumer protection statute that imposes restrictions on the use of automatic telephone dialing systems and artificial or prerecorded voice messages when

7

contacting telephone subscribers with commercial messages. See 47 U.S.C. § 227. Here, Plaintiff raises a claim under § 227(b)(1)(A)(iii) of the statute (Doc. 1, ¶ 7), which makes it unlawful for any person:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice...to any telephone number assigned to a paging service, cellular telephone service ...or any service for which the called party is charged for the call....

The TCPA is essentially a strict liability statute that does not require any intent except when awarding treble damages. See *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011).

The Court finds that Plaintiff has sufficiently pled a claim under the TCPA. Plaintiff alleges that Ocwen called her using an autodialer, and that Plaintiff knows this "because of the vast number of calls she received and because she heard a pause when she answered her phone before a voice came on the line from Defendant." (Doc. 1, ¶ 19). Plaintiff alleges that Defendant called her using an ATDS which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator (including *but not limited to* predictive dialer) or an artificial or prerecorded voice. This is sufficient at this stage. There is no way for Plaintiff to know the technological capabilities of the device(s) used to place the calls at issue in this case short of Plaintiff learning that information in discovery. Whitehead's allegations – hearing a pause when she answered before hearing a voice plus her allegations that Ocwen used an ATDS – satisfy her burden at this stage in the proceedings. See *France v. Ditech Financial, LLC*, 8:17-cv-3038-T-24MAP, 2018 WL 1695405, *7-8 (M.D. Fla. Apr. 6, 2018). Notably, the vast majority of the twenty cases cited by the parties in their briefs were

decided at the summary judgment stage, meaning that the courts in those cases had the benefit of evidence demonstrating what type of device(s) were used to call plaintiff and then applying the proper legal standard under the TCPA. Here, the Court does not yet have that benefit. Discovery of the nature of Ocwen's calling system and Ocwen's contacts with Plaintiff is required before any definitive legal standard under the TCPA can be applied to Ocwen's conduct alleged in this case.

Furthermore, in addition to claiming that Ocwen used an ATDS, Plaintiff also alleges that Ocwen used an artificial or prerecorded voice while calling her. As has previously been explained:

> From the plain text of [47 U.S.C. § 227(b)(1)(A)], each of these violations is independently actionable; a plaintiff may recover damages for calls made "using any automatic telephone dialing system *or* an artificial or prerecorded voice." Therefore, Plaintiff's claim regarding the use of an artificial or prerecorded voice is appropriately before the court, regardless of the FCC's decision with respect to the definition of an ATDS.

*Ayers v. Verizon Commc'ns, Inc.*, No. 8:14-CV-626-T-30MAP, 2014 WL 2574543, at *1 (M.D. Fla. June 9, 2014) (internal citation omitted) (emphasis in original). So even if Plaintiff had failed to state a claim regarding Ocwen's use of an ATDS, her TCPA claim would proceed based on her allegation that Ocwen used an artificial or prerecorded voice.

### C. Count II: Florida Consumer Collection Practices Act

The Court now turns to Count II, in which Plaintiff claims Ocwen violated section 559.72(7) of the FCCPA. Ocwen moves to dismiss these claims because Plaintiff fails to plead any facts to show that Ocwen's conduct was injurious or harassing and as barred by the applicable statute of limitations. The Court will address each argument in turn.[7]

---

[7] Because the TCPA claim survives, the Court need not address Defendant's argument that the Court should decline supplemental jurisdiction over the FCCPA claim.

*1. Harassment Allegations*

Plaintiff argues that Ocwen violated the FCCPA - specifically, § 559.72(7) - in two ways: first, by communicating with her with such frequency as can reasonably be expected to harass Whitehead, and, second, by engaging in other conduct which can reasonably be expected to abuse or harass Whitehead. (Doc. 1, ¶¶ 53–53). To support these claims, Whitehead alleges she suffered: (1) occupation of her cell phone and phone line; (2) unnecessary expenditure of her time by answering the phone or dealing with notifications for missed calls, impairing the usefulness of her cell phone; (3) nuisance and annoyance; (4) expenditure of her cell phone battery; (5) occupation of space in his cell phone for voicemails; and (6) trespass to her chattel, specifically her cell phone and phone line. (*Id.*, ¶¶ 40-46). Additionally, Plaintiff alleges she received an "exorbitant number" of calls over the last four years. (*Id.*, ¶ 19).

The FCCPA prohibits debt collectors from "willfully communicat[ing] with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor ... or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor." Fla. Stat. § 559.72(7). When applying and construing the FCCPA, "due consideration and great weight" should be "given to the interpretations of the Federal Trade Commission and the federal courts relating to the Federal Fair Debt Collection Practices Act (FDCPA)." Fla. Stat. § 559.77(5); *see also* *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 839 (11th Cir. 2010) ("Furthermore, the FCCPA specifies that, in construing its provisions, 'due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.' Fla. Stat. § 559.77(5).").

The FDCPA prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. This includes "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Id. § 1692(5).

Here, the Court finds at the Motion to Dismiss stage that Plaintiff has plausibly alleged that Defendant called her with such frequency to constitute harassment under the FCCPA. Plaintiff alleges that Defendant made an "exorbitant" amount of phone calls to her after she instructed them to stop on numerous occasions. Of course, call logs and other evidence of the conversations between Plaintiff and Defendant's representatives may be produced during the course of discovery which could show that Defendant did not engage in oppressive or harassing conduct. But these issues will be examined at the summary judgment stage. See Lardner v. Diversified Consultants Inc., 17 F. Supp. 3d 1215, 1225-26 (S.D. Fla. 2014) (colleting cases).

2. *Statute of Limitations*

Under the FCCPA, a debtor must commence a civil action within two years after the date of the alleged violation. Fla. Stat. § 559.77(4). Plaintiff commenced this suit on July 5, 2018, alleging that Ocwen made harassing calls to her about a mortgage debt from June 2014 to the time of filing. (Doc. 1, ¶¶ 17, 27). Because those calls straddle the two-year statute of limitations line, Ocwen argues the limitations period bars any conduct predating July 5, 2016. Plaintiff did not respond to Ocwen's statute of limitations argument in her Response. The Court agrees that it does not appear at this time that Plaintiff can seek damages for any FCCPA violations prior to July 5, 2016 unless the

Court is presented with authority to show that violations prior to July 5, 2016 could be recoverable under the FCCPA based on the specific circumstances of this case. However, the Court will not dismiss the FCCPA count based on the statute of limitations at this time as there is conduct that falls outside the limitations period.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss (Doc. 13) is **DENIED**. Defendant shall file an Answer to the Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.

**DONE** and **ORDERED** in Fort Myers, Florida this 24th day of October, 2018.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record